•LÓTTINGER, Judge.
Petitioner filed this suit against Robert Lee Clark and Lumbermens Mutual Casualty Company, the insurer of Clark’s em-’ ployer, for total damages of, $26,879.30, consisting of property, damages and personal damages to petitioner and his wife which resulted from an accident between an automobile belonging to petitioner and driven by him, and a truck being driven by defendant Clark. The Lower Court gave judgment for defendant, and the petitioner has appealed.
The facts show that at approximately 7:45 p. m. on the evening of July 14, 1953, Wallace G. Butler was driving an automobile east on the Baton Rougé-Hámmónd Highway. Mr. Butler was accompanied by Mrs. Butler and two' of his" relatives. As Mr. Butler approached a site about one mile west of the town of Livingston, he met two on-coming yehicles at a point approximately one-tenth of a mile east of the residence of Willard Andrew Hill. The first of said vehicles -failed to dim its lights, and Mr. Butler’s automobile ran into and collided with the left rear end of a truck and trailer loaded with logs. The truck and trailer was owned by Davidge Lumber Company and was being driven by its employee, Robert Clark. The Butlers sustained damages to their automobile and injuries to their person.
The evidence shows that some twenty-five minutes prior to the collision, and when at a point from one-half to a mile west of the scene of the accident, the defendant driver, Clark, was warned by. State Policemen that his rear, or tail, lights were not burning. Clark testified that he pulled off of the highway at his first chance, which was the Hill driveway located just west of the Hill residence, and repaired the lights. The only action necessary to repair the defective lights was for him to twist two wires together. He testified, and was corroborated by witness Windham, who was a passenger in the truck, that, after fixing *216 the lights, lie reentered the truck and had driven some three or four hundred feet when he was struck in the rear by the Butler car. Clark’s testimony on, this score is contradicted by that of Mrs. Hill and Mrs. Honea who were both at their residences near the scene of the accident at the time of the impact. Mrs. Hill testified that the truck did not stop in her driveway. ■ Other than this she knew little of the accident, she being informed some ten to thirty minutes after seeing the truck pass her house that an accident had occurred down the road. Mrs. Hill claims that the truck was passing her house when the policemen pulled up alongside the truck and spoke to the driver. This apparently was to show the spot where the policemen warned the driver of his defective lights. At the time, Mrs. Hill was in her home, about one hundred, feet ba.ck from the highway, and it was dark enough to require lights. Yet she was certain that she saw the policemen talking- to the driver of the truck. .
Mrs. Honea testified that the truck stopped between her house and the Hill residence. She' stated that the truck started off again, and just a sécond later the impact occurred. We feel that Mrs. Honea was mistaken both as to distance and lapse of time, as will be shown by resume of the testimony of the two State Policemen and Mr. Martin.
■The two State Policemen testified that they pulled up alongside the truck and warned the driver of the defective lights at a distance of from one-half to one mile west of the point of impact. They knew nothing of the accident itself, however, upon investigating same after the accident, they both noticed that the tail-lights on the truck were burning.
Mr. Martin was approaching the scene of the accident in a westerly direction, and was just about even with the truck when the impact occurred. He entered the highway, from a side road, some distance east of the point of impact. According to his testimony, when he entered the highway he saw the Butler car about as far west of the log truck as he was to the east of it. He approximates the speed of the log truck to have been about five miles per hour, although he admitted that it could have been traveling about twenty or twenty-five miles per hour, as was testified by Clark and Windham. He and Butler arrived at the truck at the same time. As Butler and the log track were traveling east, Martin testified that the Butler car pulled out toward its left lane, apparently to pass the truck, and then swung back to its right, just a split second before the accident. It seems from this testimony that petitioner attempted to pass the truck, noticed that his way was not clear, and then swung back into his own lane, preferring a rear end collision with the truck rather than a. head on collision.
Mr. Martin was certain that the truck was proceeding along the highway from the time he entered same until the moment :of impact. Mr. Martin measured the distance he had driven on the highway prior to the impact, and found it to be a distance of .4 of a mile. It is apparent, therefore,, that the truck had not just pulled out from its stopped position when the impact occurred.
The conclusions, as found by the Lower Court, are as follows:
“This Court has studied carefully the actions of the truck driver immediately prior to the impact to see if he could be charged with negligence. Some time-prior to the accident, he had been warned by officers in a patrol car that his. rear lights were out. He stopped at the very earliest possible moment and fixed them. Just where he fixed them, or how long he had stopped, or whether he put out flares, is immaterial to this, case, since the best evidence is that he was back on the highway and had been for more than .4 of a mile, with his rear lights burning at the time of the impact. If he had waited until a more advantageous place to stop as suggested by plaintiff’s counsel, he would have subjected the traveling public to the danger of an unlighted vehicle for a. longer period of time, and if Mr. But *217 ler had come along earlier and had run into the rear of the truck when it didn’t have rear lights burning, the negligence of the truck driver* could have been maintained even though he didn’t know his lights were out.
“Clark testified that when he pulled back onto the highway after fixing his lights, that the Butler car was just' coming around the curve, to the west behind him. Although he estimated the distance as 300 feet, he also .testified that it was behind him about- the same distance as Pope’s store in Livingston was ahead of him, and both of-these distances were each at least a mile, from the point of impact.
“All things considered, the court can see nothing the driver of the log truck -could have done to have avoided the accident, and believes that he did what an ordinarily prudent man would have done to avoid danger on the highway, and therefore, cannot - attribute to , him any negligence.
“Mr. Butler was traveling at a speed of from 40 to 45 mph. according to his own testimony, and this is borne out by the testimony of Martin who was’ coming toward him at 30 to 35 mph., covered a little less distance and arrived at the point of impact at about the same time.
“It has been given as a reason ydiy Mr. Butler did not see the red tail lights of the truck, that the truck lights were on the right side of the coupling instead of the left side, and that the truck was just starting up from a stopped position off the pavement and that the trailer was at such an angle that the lights did not show from the rear. In this connection the court b.e-, lieves the best .evidence shows that the truck was traveling when struck and that the slight ‘jack-knifing’ of the truck and trailer was caused by the impact.
“As to the position of ‘the'rear lights, the officer, Mr. Hoover, recalled that they were fastened to the rear axle immediately to the right of the coupling, and he further recalled telling the truck driver it would be,better to place them on the , left instead of the right. In conflict with this, Windham testified of helping Clark tack these lights to the longest log at the left of the load befoi:e they left the wqods. His testimony on this point- is .in detail, from pages 103 through 106 of the testimony. In either position, this court believes they were plainly visible for 500 feet tp.the rear, and, in the absence of any evidence that the l.og truck was o.f such width, as to require clearance lights,, .satisfied tire requirements of the, law.”
-We are not: able to1 find any manifest error -in 'the conclusions of 'the Lower Court; The undisputed testimony shows-that, three tail -lights were burning on the truck.. The greater amount of evidence shows that the truck had been traveling On the -highway for some period of time prior to the- impact. Why the petitioner did not see the 'truck until he was only ten feet from it, was probably ¿aused by the bright lights of the oncoming car which blinded him. If such was the case, he should have slowed his speed. Witnesses testified that the truck tail lights should have been visible for a distance of at least five hundred feet.
Under the circumstances, we do not feel that the truck presented a “sudden peril” or “trap” as is contended by the petitioner. There was no reason for' the petitioner’s failure to have seen the truck, or to reduce his speed when blinded by the lights of the approaching vehicle. We feel, as did the Lower Court, that the collision was caused by the petitioner’s own negligence.
For the reasons -hereinabove assigned, the judgment of the_. Lower Court will be affirmed, all costs of this appeal to be paid by petitioner. , . - -
Judgment affirmed.